**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMUEL CRUZ,** | : | **CIVIL NO. 1:11-CV-01473** |
| **Petitioner,** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **ADA SHAWN WAGNER, <u>et</u> <u>al</u>.,** | : | |
| **Respondents** | : | |

<u>**MEMORANDUM**</u>

Petitioner Samuel Cruz ("Cruz"), an inmate presently confined at the State Correctional

Institution in Albion, Pennsylvania, initiated the above action pro se by filing a petition for writ

of habeas corpus pursuant to 28 U.S.C.§ 2254.  (Doc. No. 1.)  In the petition, Cruz challenges his

2005 convictions in the Court of Common Pleas of Adams County, Pennsylvania ("trial court").

For the reasons set forth herein, the petition will be denied.

**I.  <u>Background</u>**

The background of Cruz's convictions was summarized by the trial court in relevant part

as follows:

> On February 29, 1992 Cruz (d.o.b. 10/4/58) married Carol Hardman. . . . Also
> living in the home was Ms. Hardman's daughter, R.F. (d.o.b. 11/01/85).
>
> On January 11, 1993, J.F., an 11-year old female neighbor, went to the Hardman
> residence to play with the children in the household during a two hour school delay.
> Cruz, then aged 34, offered to paint J.F.'s fingernails.  While doing so Cruz rubbed J.F.'s
> hand over his crotch several times.  He then removed his penis from his pants and placed
> J.F.'s hand on it.  Cruz told J.F. to keep the incident secret between them.  Nevertheless,
> J.F. informed her mother of the incident the same day.
>
> In late December, 1996, R.F., then age 11 years, was home from school due to an illness.
> Cruz was home because he was unemployed.  After R.F. got in the shower Cruz joined
> her uninvited.  He forcibly entered her anus with his penis.  R.F. did not inform her
> Mother of the abuse until much later. . . .

Several years later[,] Cruz began residing in the home of Georgia Cruz[.] Also living in the home was Ms. Cruz's daughter C.S. (d.o.b. 12/9/93). In September, 2003[,] Cruz and Ms. Cruz were married.

In mid-October, 2004, C.S. was in the shower when Cruz entered naked and uninvited. Cruz proceeded to wash her "entire" body with a sponge. he then forced her hand to wash the front of his body, including the area of his genitals. Cruz told C.S. this "was between me and you."

On October 26, 2004, after Ms. Cruz left for work, C.S. was lying on a sofa watching television before going to school. Cruz, who was not working at that time, laid behind her. Cruz reached under C.S.'s shirt and touched her breast. He then put his hand down her pants and digitally penetrated her vagina. Finally, Cruz removed C.S.'s pants and penetrated her anus with his penis. C.S. stated Cruz was wearing maroon boxers and a black T-shirt during the incident. That afternoon Ms. Cruz noticed Cruz's maroon boxers on the sofa.

On October 27, 2004[,] . . . C.S. told her mother of the sexual assault. C.S. and her mother then met with officers Justin Rogerson and William Orth of the Gettysburg Police Department. Although reluctant to discuss the incident at first[,] C.S. did make a written statement of what occurred. At that point C.S. was taken to Gettysburg Hospital while Officer Orth attempted to locate Defendant.

At 6:40 p.m. C.S. was examined in the Emergency Room by Dr. William Steinour. C.S. advised him that she had been abused by her "step-father." Cruz arrived at the hospital and asked for C.S. Dr. Steinour, who knew Cruz, advised him that he should not see C.S. at that time but the police were interested in interviewing him. Cruz appeared nervous and left the hospital.

Shortly thereafter Officer Orth confronted Cruz in an alley near the hospital. . . . Cruz was taken into custody. . . .

On November 2, 2004, Cruz was arrested for the incident with C.S. on October 26, 2004. Several weeks thereafter, R.F. reported the incident from late December, 1996, to the police. On December 17, 2004, Cruz was arrested for the incident with R.F.

(Doc. No. 10-5 at 86–88) (internal citations omitted.) On April 20, 2005, the trial court granted

the Commonwealth's motion to consolidate the two cases, finding that "there was sufficient

similarity in the manner in which the incidents occurred, sufficient geographic proximity, the

temporal gap was not excessive, and the probative value outweighed the potential for prejudice."

(Doc. No. 10-1 at 2, 17.)

On August 23, 2005, the trial court granted the Commonwealth's motion to admit evidence of the 1993 incident between Cruz and J.F. and of the shower incident between Cruz and C.S.  (Doc. No. 10-1 at 11.)  Although Cruz was not indicted for either of these incidents, the trial court found that the evidence was admissible as "evidence of common plan, scheme, or design and/or as part of the history of the case" and that "the probative value of the evidence outweighed its potential for prejudice."  (Doc. No. 10-5 at 88–89.)

Cruz proceeded to a jury trial and was found guilty on all counts.  (Id. at 89) Prior to sentencing, the trial court held a hearing at which it determined Cruz was a "sexually violent predator" under Pennsylvania's Megan's Law provisions.  (Id. at 81–83.)  The trial court then sentenced Cruz to an aggregate term of 13–35 years incarceration.  (Id. at 90.)

Cruz then filed post-sentencing motions with the trial court in which he raised several claims, including all of those in the instant petition.  (Id. at 90– 91.)  On April 18, 2008, the trial court denied Cruz's post-sentencing motions.  (Doc. No. 10-6 at 9.)  Cruz subsequently appealed the trial court's decision, and the Superior Court denied his appeal on May 19, 2009.  (Id. at 71.)  Cruz later filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on February 9, 2011.  (Id. at 82, 104.)

On August 10, 2011, Cruz filed the instant petition for writ of habeas corpus. (Doc. No. 1.)  For the reasons set forth below, the petition will be denied.


**II.    Discussion**
In the petition, Cruz raises the following claims:

1.      The trial court erred by consolidating the cases involving C.S. and R.F. into a single trial;

2.      The trial court erred by admitting evidence of Cruz's alleged sexual assault upon J.F. in 1993;

3.      The trial court erred by admitting testimony regarding alleged sexual contact between Cruz and C.S. in a shower two weeks prior to the rape he was charged with;

4.      The trial court erred by finding that Cruz was a "sexually violent predator" under the provisions of Pennsylvania's Megan's Law;

5.      The trial court erred by allowing the verdict to stand, as the jury's findings were against the weight of the evidence;

6.      The trial court erred by issuing jury instructions that were prejudicial to Cruz;

7.      Cruz was denied his Sixth Amendment right to a fair trial as a result of improper references to him being in jail and on probation;

(Doc. No. 1 at 16–26.)  Respondents contend that Cruz's claims were correctly decided in the state courts, as each one lacks merit.  (Doc. No. 10 at 4.)  For the reasons that follow, this court will dismiss the petition in part for lack of jurisdiction and deny the remaining claims.

**A.**      <u>**Standard of Review**</u>

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), the writ of habeas corpus may only be granted on behalf of a petitioner in custody pursuant to the judgment of a state court if that petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Federal courts may not grant habeas relief with respect to any claim that was adjudicated on the merits at the state court level unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  The petitioner has the burden of making this showing.  <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have

independent meaning.  Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court judgment is "contrary to" federal law when it is "diametrically different, opposite in character or nature, or mutually opposed" to "clearly established" decisions of the United States Supreme Court. Williams, 529 U.S. at 405.  This may occur if "the state court ignores or misapprehends clear precedent or it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Wilkerson v. Klem, 412 F.3d 449, 452 (3d Cir. 2005) (quoting Williams, 529 U.S. at 406).  Alternatively, "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)).  For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal citations omitted).  "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75–76 (quoting Williams, 529 U.S. at 411).  Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75.  A state court's decision is not objectively unreasonable so long as at least some "fairminded jurists" could disagree over its correctness. Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786 (2011).

Turning to Section 2254(d)(2), as well as the related Section 2254(e), the test for the

5

"unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record.  Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (citing Rice v. Collins, 546 U.S. 333, 338–339, 126 S. Ct. 969, 163 L.Ed. 2d 824 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 125 S. Ct. 2317, 162 L.Ed. 2d 196 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231 (3d. Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.").  Further, as with § 2254(d)(1), the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication.  Rountree, 640 F.3d at 538 (citing Cullen v. Pinholster, 563 U.S. ___, ___, 131 S. Ct. 1388, 1401–03 (2011)).

**B.    Analysis**

In the instant case, it is undisputed that all of Cruz's claims were adjudicated on the merits by the state courts. Because there is no issue regarding the exhaustion of his claims, this court will proceed to examine the merits of Cruz's claims.

**i. Claim One—Consolidation of Cases**

Cruz claims that the trial court erred by granting the Commonwealth's motion to consolidate the two cases against him. (Doc. No. 1 at 16.)  He argues that the two incidents were not sufficiently related to justify consolidation of the cases, and that this consolidation prejudiced him at trial. (Id. at 16–17.)  Respondents contend that the trial court's decision was in

accord with the state procedural rule governing joinder of criminal actions, Pa. R. Crim. P. 582, and applicable state case law.  (Doc. No. 10 at 4–5.)

Federal habeas relief is only available for claims arising under "the Constitution or laws or treaties of the United States," not those founded on alleged errors of state law.  28 U.S.C. § 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).  Cruz does not claim that any specific federal rights were violated by the trial court's decision to join the two criminal actions against him, but this court will construe his petition liberally as setting forth the claim that the joinder of these cases violated his due process rights.

Even under this generous construction, Cruz's claim fails because there is no Supreme Court precedent holding that the joinder of criminal indictments against a single defendant could be a violation of due process.  See Ashe v. U.S. ex rel. Valotta, 270 U.S. 424 (1926) (finding that there was "not the shadow of a ground" for habeas relief where trial court had consolidated two felony indictments); see also Spencer v. Texas, 385 U.S. 554, 562 (1967 (stating that the "inherent opportunities for unfairness" where a defendant is tried for multiple offenses is not a violation of due process).  In the absence of "clearly established Federal law as determined by the Supreme Court," there can be no basis for overturning the state courts' adjudication of this claim.  See Carey v. Musladin, 549 U.S. 70 (2006). [1]

Thus, because there is no clearly established federal law on this issue, this court will deny habeas relief with respect to this claim.

---

[1]  This court notes that there is Supreme Court dicta suggesting that the joinder of multiple indictments against a single defendant could, in some circumstances, violate due process.  United States v. Lane, 474 U.S. 438, 446 n.8 (1986) (noting, in dicta, that misjoinder in a federal criminal case "would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial").  However, "clearly established Federal law" refers only to the holdings, not dicta, of the Supreme Court.  Musladin, 549 U.S. at 74 (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).

### ii. Claims Two & Three—Testimony Regarding Other Sexual Acts

Cruz next claims that the trial court erred by admitting evidence of other incidents of sexual encounters with minors. (Doc. No. 1 at 18–19.) Cruz claims that the 1993 incident involving J.F. was not relevant to the crimes he was charged with, and that the shower incident with C.S., although relevant, should not have been admitted because its probative value was outweighed by the prejudice it would cause. (Id.) Respondents contend that the trial court correctly decided that the probative value of each incident outweighed any prejudicial effect. (Doc. No. 10 at 6–8.)

These claims appear to be based largely on an alleged misapplication of state procedural rules, for which habeas relief generally is not available. Estelle v. McGuire, 502 U.S. at 67–68. However, habeas relief is available where an evidentiary ruling is so erroneous as to deprive a criminal defendant of his or her right to a fair trial. Crane v. Kentucky, 476 U.S. 683, 690–91 (1986) (holding that the trial court erred in preventing defendant from testifying about the circumstances surrounding his confession to police). In particular, the admission of evidence of other crimes may violate due process where "the probative value of the evidence is so conspicuously outweighed by its inflammatory content as to deprive the petitioner of his right to a fair trial." Berry v. Varano, Civ. A. No. 11-6585, 2013 WL 5741828 at *7 (quoting Lesko v. Owens, 881 F.2d 44, 52 (3d Cir. 1989)).

The trial court made its determination of whether to admit this evidence by considering whether the evidence demonstrated a "common plan, scheme or design" carried out by Cruz and

whether the probative value of this evidence outweighed the potential for prejudice.[2]  (Doc. No.

10-1 at 13–26.)  The court found that the evidence could tend to show that Cruz was "engaged in

a pattern of behavior over a period of 11–12 years of sexually abusing young females."  (Id. at

17.)  The court found that the incidents were sufficiently similar to the ones for which Cruz was

indicted and that the time lapse between the incidents was not excessive.  (Id. at 21.)  The court

further found that the probative value of this evidence was bolstered by the relative lack of other

evidence to corroborate the testimony of R.F. and C.S., the alleged victims, and that this

outweighed the prejudicial nature of the testimony.  (Id. at 18.)

The trial court used a standard that was in accord with the rule expressed in Lesko, and it

was clearly a reasonable application of that law, as at least some jurists of reason could certainly

agree that the probative value of this testimony outweighed its prejudicial effects.  Furthermore,

this court finds no unreasonable determination of any factual issues in the trial courts decision on

this matter.  Thus, this court must deny relief for grounds two and three of the petition.

### iii.  Claim Four—Sexually Violent Predator Determination

Cruz next claims that the trial court erred in determining that he was a "sexually violent

predator" under Pennsylvania's Megan's Law provisions.  (Doc. No. 1 at 20.)  Cruz asserts that

the evidence offered against him did not establish that he met the statutory definition by clear

and convincing evidence, as required by the statute.  (Id.)  See also 42 Pa. C.S.A. § 9795.3(e)(2).

This claim is grounded solely on state law.  As such, even if it were the case that the trial

---

[2]  When considering a habeas petition, federal courts should look to the "last reasoned decision" made by the state courts on each given claim.  Simmons v. Beard, 590 F.3d 223, 231–232 (3d Cir. 2009).  In the instant case, the Superior Court's decision expressly adopted the trial court's reasoning from its several opinions initially disposing of Cruz's claims.  (Doc. No. 10-6 at 71.)  Thus, this court will take the trial court's reasoning in those opinions as the "last reasoned decision" for purposes of habeas review.

court inappropriately applied the statute, it cannot be a ground for habeas relief.  See Gryger v. Burke, 334 U.S. 728, 731 (1948) (holding that the erroneous application of Pennsylvania's Habitual Criminal Act during petitioner's sentencing could not serve as ground for habeas relief).  Because this is not a cognizable ground for relief, this court will dismiss this claim for lack of jurisdiction.

### iv.  Claim Five—Weight of the Evidence

Cruz next claims that the trial court erred in allowing the verdict to stand because it was against the weight of the evidence.  (Doc. No. 1 at 21–22.)  In particular, Cruz states that the trial court did not attach appropriate weight to the testimony of Dr. Lawrence Rosenberg, who stated that certain facts about C.S.'s condition following the incident did not conform with what he would expect in such a situation.  (Id. at 21.)  Cruz also states that the trial court should have placed more weight on the letters that R.F. allegedly wrote to Cruz following the incident, which expressed that she missed Cruz and loved him.  (Id.)

Challenges regarding the weight, rather than the sufficiency, of the evidence are not cognizable under habeas review.  Hyde v. Shine, 199 U.S. 62, 84 (1905) ("[I]t is well settled that upon habeas corpus the court will not weigh the evidence, although, if there is an entire lack of evidence to support the accusation, the court may order his discharge."); see also Walton v. Superintendent of Dept. of Corrections, 13-cv-2188, 2015 WL 1397256, at *3 (M.D. Pa. Jan. 12, 2015) ("[F]ederal habeas courts are not permitted to reassess the credibility of the evidence presented at trial.").  Because it is not a cognizable ground for relief, this court will dismiss the this claim for lack of jurisdiction.

### v.  Claim Six—Expert Witness Testimony

Cruz next claims that the trial court erred by allowing the Commonwealth to call an expert witness who was never "properly tendered or qualified" as an expert according to the Pennsylvania Rules of Evidence.  (Doc. No. 1 at 23.)  Cruz also argues that one of the Commonwealth's witnesses should not have been allowed to testify about the condition a child who was anally raped would be in because that witness did not have a board certification in gastroenterology or proctology.  (Id. at 24.)  Respondents counter that, under Pennsylvania law, admission of expert testimony is within the sound discretion of the trial court and that any witness may testify as an expert if "his or her experience of education logically embraces a matter at issue."  (Doc. No. 10 at 8.)

As stated above, habeas relief is available for allegedly erroneous evidentiary rulings only if they were erroneous as to deprive a criminal defendant of his or her right to a fair trial. Crane, 476 U.S. at 690–91.  In its denial of Cruz's post-sentencing motions, the trial court undertook a careful review of the qualifications of each of the Commonwealth's expert witnesses and determined that each had the necessary education and training to testify on their respective issues.  (Doc. No. 10-6 at 4–6.)

The trial court's determination was certainly not contrary to clearly established federal law and was a reasonable application of that law.  Furthermore, nothing in the record indicates that the trial court's decision was based on an unreasonable determination of any factual issues. Thus, this court will deny habeas relief with respect to this claim.

### vi.  Claim Seven—The Trial Court's Jury Instructions

Cruz next claims that the trial court gave two instructions to the jury that were unfairly

prejudicial to him.  (Doc. No. 1 at 25.)  First, Cruz asserts that the following instruction

regarding corroboration of witness testimony was prejudicial:

> The very nature of sexual offenses is that they don't occur in a public setting.  Now
> granted we've all read stories about things that have happened in certain settings where
> there's a large group of people watching what goes on, but that's pretty rare.  Sexual
> offenses normally occur in a private setting with no one else watching or around.  So,
> that's why the rule exists that you don't need corroboration.  You don't need somebody
> else to say I was there or I saw it.  You don't need any physical evidence, but the
> presence or lack of physical evidence is something you can take into account in deciding
> whether to believe the testimony of the individual.

(Doc. No. 10-3 at 96.)  Second, Cruz claims that the following instruction regarding expert

witness testimony was prejudicial:

> Just because someone qualifies as an expert doesn't mean you have to believe them, but
> you certainly—you take into account that background.
> Now when someone renders an opinion as an expert and it's based upon facts in the case;
> in other words, based upon these facts it's my opinion that something did or did not
> happen, we have to believe those facts in order for that opinion to have validity because
> if you don't believe the facts upon which the opinion is based then the opinion has no
> validity, it doesn't mean anything.  So that's how you look at the testimony of those
> folks.

(Id. at 307.)  Cruz appears to claim that the first instruction was erroneous because it states that

no physical evidence is required for a finding of guilt and that the second is erroneous because it

does not sufficiently "caution" the jurors regarding accepting expert testimony.  (Doc. No. 1 at

25.)  Respondents contend that these instructions were not prejudicial and correctly explicate

these issues of Pennsylvania law.  (Doc. No. 10 at 9–10.)

   The mere fact that a jury instruction was incorrect under state law is not a ground for

habeas relief.  Estelle v. McGuire, 502 U.S. 62, 71–72 (1991).  Rather, in order to qualify for

habeas relief, a petitioner must show that a jury instruction contained some "ambiguity,

inconsistency, or deficiency" and that there was a "reasonable likelihood that the jury applied the

instruction in a way that relieved the state of its burden of proving every element of the crime beyond a reasonable doubt." Williams v. Beard, 637 F.3d 195, 223 (3d Cir. 2011) (quoting Waddington v. Sarausad, 555 U.S. 179, 191 (2009)).  "Because it is not enough that there is some slight *possibility* that the jury misapplied the instruction . . . the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Waddington, 555 U.S. at 191 (quoting Weeks v. Angelone, 528 U.S. 225, 236 (2000) and Estelle, 502 U.S. at 72.)

The trial court denied this claim as part of Cruz's post-sentence motions.  (Doc. No. 10-6 at 6–7.)  In its opinion, the trial court explained that, under Pennsylvania law, physical evidence is in fact not needed to convict someone of a sexual offense and that its instructions regarding expert testimony were "fairly standard."  (Id.)  Cruz offers no evidence to show how these instructions were in any way erroneous, and this court finds nothing to suggest that is the case. See Com. v. Dillon, 863 A.2d 597, 601 (Pa. Super. 2004).  Even if one of these instructions was an erroneous expression of Pennsylvania law, there is no indication that either instruction caused the jury to make its determinations in a way that "relieved the state of its burden of proving every element of the crime beyond a reasonable doubt." Beard, 637 F.3d at 223.

The trial court adjudicated this claim using a standard that was not contrary to clearly established federal law and it applied that standard reasonably.  For that reason, this court will deny relief with respect to this claim.

### vii.  Claim Eight—Improper References to Incarceration

Cruz's final claim is that he was denied his right to a fair trial due to two occasions where witnesses referenced him being in jail and on probation.  (Doc. No. 1 at 26.)  The reference to

Cruz being in jail was made by C.S. after she was asked to explain how she knew Cruz.  (Doc. No. 10-1 at 55.)  The Commonwealth asked C.S. to explain when Cruz lived with her, to which C.S. replied, "Two weeks after my mom had met him he had moved in and until this happened and he had gone to jail, he lived with us."  (Id.)  Defense counsel then objected, and the trial court gave a curative instruction to the jury.  (Id. at 56–57.)

The reference to Cruz being on probation was made by Officer William Orth on direct examination.  (Id. at 95.)  When explaining how he found Cruz while following up on C.S.'s report of the incident, he stated, "It was my understanding that if we did find Mr. Cruz that probation," at which point he was interrupted by defense counsel's objection, which the trial cour tsustained.  (Id.)  Respondents argue that these two instances were not so prejudicial as to violate Cruz's right to a fair trial because they were "mere passing references" and that the trial court gave a curative instruction in response to the first reference.  (Doc. No. 10 at 10.)

Cruz does not cite to any authority to demonstrate that such references to a defendant's incarceration constitute a violation of due process, and this court has found no Supreme Court case that would qualify as clearly establishing such a rule.  See United States v. Henry, cr-06-33-02, 2012 WL 5881848, at *6 (noting the lack of authority on this issue and that several circuit courts have held such passing references to incarceration do not amount to a constitutional violation).  In the absence of Supreme Court precedent directly on point,[3] there is no "clearly established Federal law" that the state courts could have unreasonably applied or otherwise contradicted.  Musladin, 549 U.S. at 77 (2006).

---

[3]  This court notes that in Estelle v. Williams the Supreme Court held that criminal defendants could not be forced to wear prison garb when appearing before the jury.  425 U.S. 501 (1976).  While this holding is related to the issue in Cruz's claim, it does not qualify as "clearly established Federal law" on this issue.  See Musladin, 549 U.S. at 77.

Because there is no clearly established federal law on this issue, this court will deny habeas relief with respect to this claim.

## III.   <u>Conclusion</u>

The claims in the instant petition were all either reasonably adjudicated in the state courts according to standards consistent with clearly established federal law or are based solely on alleged errors of state law that are not cognizable in federal habeas review.  Accordingly, this court will deny the petition with respect to those claims based on federal law and will dismiss the petition for lack of jurisdiction with respect to those claims based solely on state law.

The court must now determine whether a certificate of appealability should issue.  A court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires that the petitioner "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Here, the court denies a certificate of appealability because jurists of reason would not find it debatable that Cruz's petition must be denied.

An appropriate order will issue.